[Filed November 18, 1889.]

WILLIAM MOAKLER, RESPONDENT, *v.* WILLAMETTE
VALLEY RAILWAY COMPANY, APPELLANT.

Where a passenger riding on a car with his elbow resting on the window-sill, and
slightly projecting out of the window, but his hand and wrist were inside, and a
stick of cord-wood fell from the pile corded or stacked near the track, through the
open window at which he sat, striking in the palm of the hand, or near it, catching
in the mouth of the coat sleeve, and jammed the arm backward, and injured it.

*Held*, that the facts were not such as the court could decide to be negligence in law by
allowing a nonsuit, but were for the jury.

APPEAL from the circuit court for Multnomah county.

*C. H. Carey* and *Mitchell & Tanner*, for Appellant.

*C. J. McDougall*, for Respondent.

LORD, J.—This is an action brought by the plaintiff to
recover damages for an injury alleged to have been caused
by the negligence of the defendant while he was a passen-
ger on one of its trains.   By his answer the defendant de-
nied the negligence alleged, and averred that the negligence
of the plaintiff contributed to his injury. To this the plain-
tiff filed his reply, and, issue being thus joined, the trial was
proceeded with until the plaintiff rested his case, when the
defendant, by his counsel, moved for a judgment of non-
suit, upon the ground that the evidence showed that the
plaintiff was guilty of contributory negligence, which the
court allowed, and from which the present appeal is taken.
Explanatorily, it may be said that the evidence showed
that large piles of wood were corded, at places along the
track, about one foot or a foot and a half from the cars,
and so high that passengers often could not see out on
account of it; that from one of these piles some of the
sticks fell upon the cars, and through the window at
which the plaintiff was sitting, with his arm resting on the
window-sill, causing the injury complained of. As relevant
to the point upon which this case must be determined, it
is necessary to understand how the injury occurred.   Mr.
O'Leary, a witness for the plaintiff, testified: "It hit him
in the palm of the hand; that is where the wood hit him.
It was not on the elbow.   The elbow went up against the

jamb of the window, and that is what hurt his elbow.  (2)
How was his hand?  Answer.  Probably a few inches out
of the window.  The force of the stick and the car going,
of course, hurt his elbow; that is what done it."  On cross-
examination, after testifying that the stick came through
the open window, in reply to the question that the stick
struck him "when his hand was outside," he says: "His
hand was inside.  It was the wood that hit his hand; it did
not hit his elbow."  Question.  "It pressed his hand back
this way?"  Answer.  "Pressed it back against the window,
and that is what hurt it,—hand inside the window."  Q.
"Elbow outside?"  A.  "Yes, sir; I think so."  Q.  "How
far did the elbow extend outside?"  A.  "May be a few
inches; I don't know."  It will be noted that this witness
first stated that the plaintiff's hand was "probably a few
inches out of the window," but on his cross-examination
testifies that it "was inside the window," and that the
"elbow was outside" of the window a few inches.  Look-
ing at the whole of the evidence, and the manner in which
he says the injury occurred, it was probably the elbow to
which he referred; and this, too, is consistent with the
testimony of the plaintiff, who succeeded him as a witness.
After some preliminary matters, the plaintiff testified:  Q.
"Now, you may state whether or not any part of your arm
was projecting *outside of the car.*" A.  "No, sir; it was
right on the window-sill."  Q.  "You say that this falling
stick of wood caught in your coat, and jerked your hand
out?"  A.  "Sitting just like here [explaining by reference
to witness-box]; stick struck just here [referring to the
mouth of his coat sleeve], and pulled it out," etc.  "I was
this way; train going this way; arm on the window right
here.  The first thing I knew, a piece of wood, coming in,
grabbed my coat-sleeve in the mouth of it, something like
here, and just pulled my arm out, and got jammed back-
wards," etc.  Q.  "Your arm was resting on the window?"
A.  "Resting on the window."  [Evidently means resting
on the window-sill.]  Q.  "Was your elbow out three or
four inches?"  A.  "Two or three inches,—maybe four

inches." Q.  "Caught in the palm?" A.  "No, sir; in the coat sleeve, and pulled right out."

It will be observed that both witnesses agree that the hand was inside, and that the elbow was outside, of the window; that the stick of wood which did the injury came through the open window, and one says struck the palm of his hand, and the other, caught in the mouth of his coat-sleeve; but both agree that the stick did not hit the elbow and as to the manner it operated in jamming the arm backwards and producing the injury.   The plaintiff's testimony is that his arm was resting on the window-sill, but that no part of his arm was outside of the car, although he admitted it was outside of the window.   This must be based on the idea that the window-sill slightly extended beyond the exterior surface of the car.   The truth is, it is generally difficult to reconcile the testimony in cases of this character, and reach a state of facts not disputed and beyond the reach of controversy.   At any rate, in our judgment, the evidence submitted by the plaintiff tended substantially to establish this state of facts:   That the plaintiff, while riding as a passenger on one of the defendant's trains, rested his arm on the window-sill of an open window, with his hand inside, but his elbow extending a few inches outside of the window; that alongside of the track a great quantity of cord-wood was piled at places, so high as to obscure a view from the window of the cars, and at a distance of a foot or a foot and a half from the cars; that while thus riding some of the sticks of cord-wood fell from the pile, and against the cars, and through the window, upon his palm, or caught in the mouth of his coat-sleeve near the palm, and jammed his arm backward, breaking it, and badly lacerating his arm and hand.   As here used, when it is said that the elbow was outside of the window, it is meant that it was outside of the surface of the window, and exposed to injuries from external objects. It was so treated at the argument, and it will be so considered by us.

The inquiry, then, presented by this record is:   Do the

facts show such an act of contributory negligence on the
part of the plaintiff as will prevent a recovery, and make it
the duty of the court to so declare as a matter of law,
notwithstanding the negligence of the defendant in permit-
ting the wood to be so carelessly piled near the track of
the passing train?  "Contributory negligence" is defined
to be "a want of ordinary care upon the part of the person
injured by the actionable negligence of another, combining
and concurring with that negligence, and contributing to
the injury as a proximate cause thereof, without which the
injury would not have occurred." 4 Amer. & Eng. Cyclop.
Law, 17.  The law will not permit a recovery where the
plaintiff, by his own negligence, has contributed to produce
the injury from which he has suffered.  "And it matters
not," said Mr. Justice Field, "whether that contribution
consists in his participation in the direct cause of the
injury, or in his omission of duties which, if performed,
would have prevented it.  If his fault, whether of omission
or commission, has been the proximate cause of the injury,
he is without remedy against one also in the wrong."  And
he adds that "it would seem that the converse of this
doctrine should be accepted as sound; that when one has
been injured by the wrongful act of another, to which he
has in no respect contributed, he should be entitled to
compensation in damages from the wrong-doer."  *Little* v.
*Hackett,* 116 U. S. 371.

To have adjudged the plaintiff guilty of contributory
negligence, upon the facts, the court must have found that
there was want of ordinary care on his part, and a proxi-
mate connection between such want of ordinary care and
the injury complained of.  Our case, then, is thus put
by Mr. Beach: "(1) Did the plaintiff exercise ordinary
care, under the circumstances?  (2) Was there a proximate
connection between his act or omission and the hurt he
complains of?"  Beach Contrib. Neg. § 3, p. 7.  If these
two questions be answered in the affirmative, the two
elements concur which constitute contributory negligence,

and, in the sense of the law, the plaintiff is responsible for his own wrong, and is precluded from a recovery.

The facts show that plaintiff's elbow was slightly extended outside of the window, but that the other portion of his arm and hand was inside of the window. The elbow was not hit, but a stick of wood, falling through the open window at which he sat, and upon the sill on which his arm rested, struck the part of the arm inside of the window, and caught in the mouth of the coat-sleeve, which, with the motion of the train, jammed the arm backward against the frame of the window, and produced the injury complained of. Now, it will be noted (1) that, although the elbow was outside of the window, it was not hit, and the injury did not arise as the direct consequences of the exposed condition of the elbow to external objects with which it might come in contact by reason thereof; and (2) that the hand and part of the arm which were struck with the stick were within the window. The facts concede that an injury would be likely to happen if the elbow had not been exposed, while the arm continued to rest upon the window-sill in the same relative position. By merely changing the angle of the inclination of the arm, so that the elbow would not be exposed, leaving the arm otherwise in the same relative position, a similar injury would have likely happened or resulted, upon the facts. But in neither case, whether the elbow was inside or outside of the window, is the injury occasioned by or the result of its contact with external objects. Yet this judgment punishes the plaintiff with the same consequences as if the injury resulted from exposing the arm outside of the window to contact with external objects. In that view it makes no difference whether the arm or elbow is inside or outside of the window when the injury occurred,—the same legal consequences ensue; but this cannot be, unless it be a negligent act to rest the arm on the window-sill of the car, irrespective of the fact whether the injury occurred to the exposed part of the arm or not.

The counsel for the defendant insists that the plaintiff

XVIII. OR.—13.

by exposing his elbow two or three inches out of the win-
dow contributed to produce the injury of which he com-
plains, and that without which he would not have been
injured.   He places the injury upon the same footing as if
it had occurred in consequence of the elbow being struck
by reason of its exposure to passing objects external to
the car, and as a consequence, asserts that the conduct of
the plaintiff was negligence *in se*, and as such, that it was
the undoubted duty of the trial court to grant the non-suit.
In support of this position he cites *Railroad Co.* v. *McClung*,
56 Pa. St. 294; *Railroad Co.* v. *Andrews*, 39 Md. 229; *Railroad
Co.* v. *Rutherford*, 29 Ind. 82; *Todd* v. *Railroad Co.*, 3 Allen,
18; *Railroad Co.* v. *Dunn*, 78 Va. 645; *Railroad Co.* v. *Dickings*,
5 Bush. 1.   It will be best to ascertain the facts upon which
the law is predicated in these cases, to understand the
reason of it and the principle applied.   In *Railroad Co.* v.
*McClung*, the plaintiff was injured "while a passenger in
the cars of the defendant, by reason of the protrusion of
his elbow beyond the sill of the car window next to which
he sat during the journey, or part of it, coming in contact
with a car standing on a switch on the defendant's road."
In *Todd* v. *Railroad Co.*, 3 Allen, 18, the court say that "the
only error in the instruction of the court related to that
part of the case which involved an inquiry into the position
of the plaintiff's arm at the time of the accident.   If he was
then riding in the car with his elbow or arm projecting out
of the window, by reason of which he sustained an injury,
he was guilty of a want of due care, which would prevent
him from maintaining his action."   In *Railroad Co.* v. *Ruth-
erford*, 29 Ind. 83, "the evidence showed," says the court,
"that the injury received was a broken arm, and that at
the time of the accident the plaintiff's arm was projecting
out of the window of the coach in which he rode, in conse-
quence of which it came in contact with some object
outside, probably a timber frame supporting a water-
tank."   In *Railroad Co.* v. *Andrews*, 39 Md. 342, the court
say:  "It is admitted his arm at the time was out of the
window," and that "it is perfectly clear he would have

received no injury if his arm had not been in this position."
Without further reference, it is enough to say that the plain
result of these cases is that if a passenger is riding in a
car, with his elbow or arm projecting out of the window,
by reason of which he sustained an injury, it is such a
clear act of contributory negligence on his part as will
prevent a recovery, and make it the duty of the court to so
declare, as a matter of law, notwithstanding the negligence
of the defendant in permitting obstacles to be placed too
near the track of the passing train.

But why is it contributory negligence, within the reason
of these cases? The answer is, because, in projecting his
elbow or arm out of the window, he was bound to know,
as a reasonable man, in the exercise of ordinary care and
foresight, that there was liability to injury from the exposed
condition of the arm coming in contact with some external
obstacle or force. He ought to know, to expose his arm
or elbow under the surrounding circumstances, that it was
dangerous, and liable to result in injury to it, because a
prudent man might well foresee the possibility of such an
occurrence; and, if he do not avoid it by the exercise of
such reasonable foresight, he may justly be held to have
taken upon himself the risk of such a peril. It is therefore
considered in these cases to be a want of ordinary care for
a passenger riding in a car to protrude his arm or elbow
out of the window, and if he does, and is injured by reason
thereof, it results, as a consequence, that his own want of
ordinary care has contributed directly to produce such
injury as the proximate cause thereof. But how is this to
apply to the facts in the case at bar? It was not the elbow
of the plaintiff, or any part of his arm that was exposed to
injury from outside obstacles, that caused the injury. His
elbow, or the part of the arm outside of the window, was
not hit. The stick of wood struck the palm of his hand,
or so near it as to catch in the mouth of his coat-sleeve,
which was inside of the window, and not exposed to exter-
nal objects, unless they came inside of the window, as the
evidence here shows. The cases referred to, and relied

upon by counsel, proceed upon the hypothesis that the injury occurred because the elbow or arm which was exposed out of the window came in contact with some external obstacle or force, and produced the injury. In the strongest of these cases, *Railroad Co.* v. *McClung*, and often cited, Thompson, C. J., said: "If he allow it [arm] to protrude out, and is injured, is this due care?" which Bigelow, C. J., had previously answered in *Todd* v. *Railroad Co.*, *supra*, saying: "If he was riding in the car with his elbow or arm projecting out of the window, by reason of which he sustained an injury, he was guilty of a want of due care." The due care here required to be exercised is not to expose the arm out of the window, as there is liability that it may come in contact with outside obstacles. It is based on the idea that, when an arm is thus exposed, the injury which may result may be foreseen and avoided by the exercise of ordinary circumspection. It has no reference to risks or injuries which, according to common experience, and in the exercise of reasonable care and foresight, could not have been anticipated, or their consequences avoided. "We are not to link together," said Agnew, J., "as cause and effect, events having no probable connection in the mind, and which could not, by prudent circumspection and ordinary thoughtfulness, be foreseen as likely to happen in consequence of the act in which we are engaged. It may be true that the injury would not have occurred without the concurrence of one act with the event which immediately caused the injury; but we are not justly called to suffer for it, unless the other event was the effect of an act, or was within the probable range of ordinary circumspection, when engaged in the act." *Fairbanks* v. *Kerr*, 70 Pa. St. 86. Sitting, as he was, with his arm resting on the window-sill, and his elbow projecting out, especially in view of the fact that a similar injury would have probably occurred whether the elbow was inside or outside of the window, was it within the range of ordinary circumspection and foresight to have anticipated, as likely to happen, the event which occurred, and produced his

injury,—to have anticipated that a stick of wood should fall through the open window, and inside of it, and strike his palm, or so near it as to produce the injury admitted, in consequence of the act in which he was engaged? Under the circumstances of this case, are we authorized to say, as a matter of law, that by the exercise of ordinary care and prudence he could have foreseen that there was liability to injury in the way in which it occurred, as the consequence of his act?

Be it remembered that the injury did not arise because the elbow projected, but because the stick struck the palm or wrist inside of the window, where it had a right to be, and worked its injury, and the case, upon its facts, would seem to stand precisely as if the arm rested on the window-sill entirely within the car.  The law is well established that this cannot be declared to be negligence *in se.* In *Farlow* v. *Kelly*, 108 U. S. 208, it was held that it was not contributory negligence for a passenger to rest his arm upon the window-sill of a car in which he was riding without allowing it to project.  Such an act creates no presumption of negligence, and cannot be declared negligence in law.  *Breen* v. *Railroad Co.*, 109 N. Y. 297; *Winters* v. *Railroad Co.*, 39 Mo. 470.  The inception of the injury being inside of the window, it was not caused by any exposure of the arm outside of it, and can we say, logically or judicially, that the act of the defendant contributed to produce it?  It would seem, as to the facts upon which that injury was predicated, that he stood without fault; for although the plaintiff may have been negligent in allowing his elbow slightly to extend outside of the window, yet if that did not cause the injury, and the result was the same as though he exercised the care required, and kept his arm inside, then such want of care, as was said in *Walker* v. *Westfield*, 39 Vt. 246, did not contribute to produce such injury, and it is the same as though he was without fault.

As the injury occurred, then, the plaintiff was under no legal obligation to assume or anticipate that sticks or a stick of falling cord-wood would be projected inside of the

window, and cause the accident where it happened.   To
have his hand and wrist where they were, and where the
stick struck them, was where they had a right lawfully to
be, and raised no presumption of negligence in law.   If
such is the case, however strict the rule of contributory
negligence may be enforced, can we declare that the negli-
gence of the plaintiff was the proximate cause of the injury,
or, in other words, that his want of ordinary care contrib-
uted directly to the injury?   It is enough to say when the
arm is exposed, and the injury occurred on that account,
when the facts are admitted, that it is negligence in law.
Negligence is generally a question of fact, to be decided
by the jury upon all the facts and circumstances, and the
court ought not to declare it as a matter of law, unless
there is such a plain act of carelessness upon the part of
the plaintiff contributing to his injury as makes that a
duty.   The rule, as it is established by the weight of
authority, has not always met with entire approval, and is
sufficiently strict and arbitrary, without extending the
domain of its operations.   In *Spencer* v. *Railroad Co.*, 17
Wis. 487, the opposite view is ably and forcibly presented
by a vigor and fitness of reasoning which it is difficult to
answer.   The truth is that it is an every-day occurrence
for passengers to ride with their elbow on the sill, slightly
extending out of the window, though not perhaps outside
of the sill.   We all know in warm weather, when the
windows are up, it is the constant and ordinary habit of
passengers of all classes and all degrees of intelligence to
so ride; and, judged in the light of our general knowledge
and experience, it would be difficult to condemn such con-
duct as an act so plainly and palpably careless as to require
the court to declare it negligence as a matter of law.   If
the rule is to obtain as decided by the weight of authority,
let it continue to be confined in its operations to injuries
which result from exposing the arm to outside obstacles,
but let it not be extended to those where the facts are
complicated, and the injury, although the elbow was
slightly out of the window, did not arise from that fact, or

if it had been inside, the arm otherwise preserving its relative position, a like injury would probably have happened. In cases of the first sort it may be conceded, when the facts stand confessed or admitted, that the court may declare the act negligence as a matter of law; *non constat* that it can upon the facts here. In cases of this sort, where the facts are complicated and debatable, where men of ordinary discretion and prudence might differ as to the inferences to be drawn from them in determining the character of the act, it is safer and better to submit them to the jury in connection with all its attendant circumstances, whom the law assumes to be best qualified to dispose of them under proper instructions from the court, than that the court itself should decide them, as a question of law, by allowing a non-suit. Before the court can do this, and cut off the plaintiff's right to submit his case to the jury, the inferences from the proof ought to be certain and incontrovertible, freeing the mind from all doubt or hesitation; for it must always be borne in mind that it is generally for the jury to determine whether the defendant was negligent, or the plaintiff was contributorily negligent, which, as Dr. Wharton has aptly said, is seldom the "subject of direct proof, but an inference from facts put in evidence."

The judgment must be reversed, and the non-suit set aside.